Okay, the next argued case is number 17, 1930, voter-verified. Incorporated Against Election Systems and Software, Mr. Provatola. May it please the court. This case sweeps back to 2009 when it was first, actually, the case and the issues that are presented were first presented to the District Court and Middle District of Florida. And the result of that, that particular lawsuit terminated with the appeal before this court in which there was a total affirmance among the things that were affirmed by this court. Was the previous in that lawsuit, which is, of course, the predecessor to this action for infringement for the against the same parties and with respect to the same issues. So when that appeal was concluded, this case had been frozen into a determination of liability on the part of the defendant. Mr. Provatola, we're dealing with 101. Yes. And even if we agree with you that the law didn't change, after all, you can go back to Bilski, where there's a holding that business method patents are not patent eligible. And even putting aside the estoppel issue, why shouldn't we just look at this under well-established 101 standards and see it as a bunch of abstract ideas? Well, that's that's basically what the defendants would have you do. And of course, it would how I don't know how it would constitute a bunch of abstract ideas unless you dissected the claims into their pieces and said, each of these pieces are not totally inventive. And therefore, the accumulation or the combination cannot be inventive. And of course, that is precisely what was argued against for argued against by Justice Thomas in his Bilski concurrence. I see. This is the this is the error that you could fall into by by thinking that that you can take a combination which may happen to include various items that have are common to a process like the election process and and thereby examine each one and reduce it into terms that are common. But there's nothing there's nothing new here. It's voting. It's printing of votes. It's comparing the words aren't new votes and a decision and inputting of information. This doesn't look like it meets any of the the Alice or Mayo standards. Oh, it does. Because what you're doing is essentially you're referring to words that make up the claims and say these things are abstract. Well, of course, all words are abstract. They all represent different concepts. And it's the accumulation and the combination of concepts that it was the reason why this was found to be a patentable invention on the part of the the patent board. The combination of concepts is itself abstract. A combination of concepts is itself abstract. This is a combination of concepts. No, no. The combination of different steps, you see, different actions. And in their combination, each possibly each one could be considered to be unpatentable by itself, of course. Right. But the combination had never been done before. And it resulted in something which was the exact objective of the of the patent itself. The patent itself is directed to producing a perfect ballot. In other words, a ballot that was voted for by the by the voter and which actually represents, without mistake, his his vote. And it is the processing of that that particular type of ballot that is the basis for the invention. This is pretty well stated in the in the background of the invention and in the in the patent itself. So what was addressed in that particular situation? This was during the 2000 election in which one of the co-inventors was the chairman of the canvassing board of Volusia County, which was the only county that actually conducted and finished a recount. The the fact is that that during the process that of this canvassing and production of this production of this recount, it was observed by one of the inventors that the biggest problem was the necessity for interpretation of different markings on the ballot. In other words, there is a thing called a mark sense ballot, which I'm sure you're all familiar with, because you probably use them. You go to a polling place, you're handed a ballot with a bunch of circles and names on it, and you're supposed to fill in the circle. Well, the mark sense ballot is very difficult to use. As a matter of fact, there's no guarantee that any of the things that have any of the votes that are made with the mark sense ballot are properly counted because any any deviation can be rejected by the machine. Now, there are certain remedies that have been used to try to correct that, but there's nothing certain about whether or not the ballot actually represents the votes of the voter in terms of how you interpret a mark sense ballot. So so we're we're that was the whole objective of this patent is to produce a ballot, which is generated by a computer based upon the input from the voter, whereby these these mark sense ballots are precisely filled out. OK, and can be precisely counted by the voting counting machine. And that's that's basically it. Now, it's not just a question. The let's let's look at the claim. Let's look at claim one and let's go backwards here and apply the Alice test claim one. Yes, I mean, I'll claim forty nine or forty nine ninety four. Right. And claim one is representative of those claims. I don't think it is. OK, well, which claim would you like us to look at? Claim forty nine was held invalid already for obviousness, right? No, that's that was the case. But which claim would you like us to look at? Look at claim forty nine because claim forty nine is not held invalid for its contribution to all of its dependent claims. There are numerous deep claims that are dependent on claim forty nine, which were. That's right. It was asked you to focus focus on the invention. And he said, what about claim one? You said not claim one. No claim. What is claim? Would you like a claim? Now, those are all the dependent claims. The only claim that was held to be invalid was by this court, by two of the members of this court, with respect to the infringement action that has been brought. So-called prior art that was claimed to actually have been applied. That's forty nine against forty nine. So it's dead. Claim forty nine is dead. No claim. Forty nine leaves and lives in all of the dependent claims, the claims that are dependent upon it by statute. Claim forty nine has been deemed to be invalidated. Right. And it can be invalidated by by this court for the time being, but not necessarily invalidated in in this action because that existed in that action. Now, the defense might raise the issue. Which claim do you want us to look at in terms of claim forty nine? OK, I'm looking at forty nine now. Good. You have a it's a method claim. Yes. OK. You have a computer voting by vector. I don't know what that means. No, that was that was a misprint by the patent office. All right. It's in here. We're looking at claim forty nine. OK. And we have a computer. We have a voting station. We have a ballot. We have printing. We have storage for temporary storage for votes. I guess that's like a database. Talk about comparison, but I don't see how I think the human does that, you know, checks out the ballot. You don't you're not claiming that much. So far, I'm not claiming it. You're not claiming the human being looking at the ballot. I'm looking. I'm looking here. It's the voter that looks at the ballot to decide. You're not claiming the voter looking at the ballot. And if you do that, then you're going to have a bigger problem. No, I do not. Because that is a participation. When I look at forty nine and I see the methods and I see the steps, it's all conventional. There's nothing inventive there. There's nothing. The printing of the ballot is is is not conventional. The printing of the votes in the ballots is not. No, the printing of the votes on the ballot is not conventional. That had never been done before. It's printing of the votes on the ballot. In other words, the mark sense ballot has all the dots that have to be filled out. Right. And when they're filled out by a person, they're usually screwed up. But the fact is that what we have is a machine, right? A printer that responds to input and fills out the ballot perfectly so that there can be no mistake as to what the voter voted for. And it is that aspect of it, including the voters review of that ballot after it's printed. OK, from his input into the computer, when he examines that, he gets an opportunity to determine, well, is this what I really voted for? You know, and when that determination is made, he has made the comparison. Now, all of that is included within the system. Within the system that is accused of infringing. And the fact is that the main reason that the middle district and this court consider that to be inappropriate and not infringing was because of the muni auction case and muni auction doctrine and the single entity rule. And the necessity for there being a employment or agency relationship between the voter and the and the company that produced the machine produced the system. So the fact is that because there was no such employment relationship, it was found not not to infringe. However, there is no way that anyone can go into a into a voting voting situation and do what he pleases. He has to adhere to the voting system that he is presented with. And having been presented with that situation, he has to conform to it and thereby is under the control of whoever produced and provided the voting system. And thereby complies with the issues that are usually presented with three with respect to control in the BMC case, which, of course, established the single entity rule. So now once that now this court, of course, I think wisely disposed of that aspect of the single entity rule by in the Akamai cases. We're not dealing with that. The counselor. Excuse me. You're consuming time with an issue that that is not before us. The Akamai rule. Oh, I'm just pointing out why we are here. And the reason we're here is because absent all of these things that have been overturned and overruled. We are have already won this action, say, for the Hail Mary pass that has been attempted by the motion to dismiss dismiss under Rule 12. I think it will be. So that is a Hail Mary pass for sure. And it is the wildest application, a least logical approach to determining whether or not this is an abstract idea. I wonder if we can make application to ordinary philosophical principles in determining what an abstract idea is. You can't patent an abstract idea such as a voting system that makes a perfect ballot. That's an abstract idea, not not the precise illumination of all the steps that are necessary to carry that out. So you want an abstract idea. That's it. This is general description of what we have. And it is comprised of words which are concepts and therefore abstract. And if that's what you have to hang your head on. Obviously, there is a departure here from ordinary philosophical principles as to what abstract actually means. So that being the case, the thing that the other thing that was determined, if you read the order, the judge's order, which is wholly grouped with non sequiturs and and assumptions, then one of the main things that he held in that process was that this thing is using a computer, that there is a computer that's used by this by this process. And therefore, it is invalid under under the Alice rule, because it is the computer. The computer is actually employed in some part, but the computer is not employed to completely use and completely utilize the system. It is used only for the selection and printing of the of the ballot. The rest of this, the rest of the system, the rest of the method is something that the the voter is forced by not forced, but has to voluntarily comply with in terms of carrying out the system. And thereby is under the control of the voting authority, which is using the system, which is which was purchased on the basis of that particular control. So let's hear from the other side. Thank you, Mr. Evans. Thank you, Your Honor. May it please the court. With regard to the section one on one issue that we have present here, I believe the abstract idea in the claims is the vote collection verification that the trial judge found in the briefing. Plaintiff asserted that the representative claims here are claims 49, 85, and 93. He cites those again today. As Your Honor noted, claim 49 has already been found invalid on prior art. The prior art showed the idea of using a computer to fill out a ballot and count the ballot. If you look at claim 85, it's identical to claim 49, except that claim 85 is actually broader because it's missing the inputting of information step that you find in claim 49. Aren't there physical steps to 85? Voting, printing? In other words, it's not all abstract, right? I believe it's abstract, Your Honor, because under Mayo, merely implementing an abstract idea with a computer is not enough. In here, what you have is a computer. In other words, these are well-established. To the extent that there are physical actions, they're well-established. Yes. You vote with a computer. You're basically giving input to a printer. The computer prints what you want it to print. You look at the output of the printer and you say, is this what I want or not what I want? If it is, you vote. If it's not, you ask for a new ballot. Do you think the district court erred in saying that the law changed with Alice? I believe the law did change with Alice. Really? I believe so. First of all, Alice affirmed us where we had held those claims were abstract. Then there was Mayo. Then there was Bilski. How did Alice add a detail? I'm sorry. Mayo changed the law. Alice came after Mayo. I believe Mayo changed the law. The motion here that was originally started this all was filed before Bilski. Judge Fawcett decided that motion shortly after Bilski in September 2010. This second case on appeal here was filed after Mayo, right? Yes. So the second case on appeal was after the change in the law. So we believe since there was a change in the law, issue preclusion does not prevent us from raising this issue again. I don't believe for issue preclusion to apply at all, apart from the fact that it was a change in the law, separately you have to have four things for issue preclusion to apply, two of which I don't believe apply here. One of the things is that the issue had to actually be litigated the first time around. On the first time around, one of our affirmative defenses was section 101. Plaintiff moved broadly to say none of the affirmative defenses apply. We selected the ones that seemed most apt at that time. That was a pre-Bilski moment. And we did not assert 101 at that time. Judge Fawcett found that we made no response to the section 101 defense, and so she entered judgment against us on section 101. So it was never actually litigated. Your theory is that by not responding, all estoppels were avoided? Yes, Your Honor. Because for issue preclusion to apply... Even though summary judgment was granted? Yes, Your Honor, because we didn't oppose it. And separately, the decision under section 101 was not critical and necessary to that part of the judgment. It wasn't critical... Did you cite precedent to that effect? If a case is properly before a court and you decide not to respond to a particular issue, you can remove that impact from an adverse judgment? I believe we cited in the brief, when you take a consent judgment, when you accept an issue by consent, that the estoppel doesn't apply in a subsequent lawsuit. As importantly, I believe, Your Honor, the 101... That's different from default, right? Apologize? That's different from default. I mean, you chose not to litigate it, but the issue was properly before the court.  It was litigated. At least one of the parties is litigating it. Yes, Your Honor. They certainly asked to have judgment entered on all of our defenses. And the replying to simply all of those... There were seven motions for summary judgment, I believe, filed against us. And replying to all of them required a lot of different issues and things to be briefed. And at some point, we had to pick and choose. And we did pick and choose. And secondly, when Judge Fawcett entered the order, finding that we were not liable for patent infringement, Section 101 was not critical and necessary to her decision. She found there was no infringement. She also found invalidity of the claims. When you look at the claims that are issued here, 49 and 85, 49 was found involved in the prior art. 85 is broader because it's missing one of the elements. And Claim 93 only adds a tabulation step. In other words, you count the vote after you've actually cast the ballot. And so we submit that there's nothing novel here for purposes of doing an abstract idea analysis in terms of does it add anything beyond the abstract idea. We submit it does not. So I believe if we step back to issue preclusion, of the four things required to show issue preclusion, I submit it wasn't actually litigated because, as Judge Fawcett found, we didn't oppose it. And it wasn't critical and necessary to her decision, finding that we had no liability under this patent. Separately, I believe that we filed the original motion before Bilski. She entered her summary judgment shortly after Bilski. Final judgment was entered. Subsequent to that, the Mayo decision was handed down. Subsequent to Mayo, Alice was handed down. So all of this happened before Mayo and Alice. In the mortgage grader case, the issue was whether or not Mayo was a sufficient change in the law to allow someone under some pretty rigorous local rules to add a section 101 defense. But this case was filed after all these decisions, right? The first case was not. The current lawsuit. The first case isn't before us. The current lawsuit was filed after everything. That's correct. Right. Yes. And so after the law changed, the second case was filed. What's the test for changing the law with respect to Estoppel? If you have a change in the law, then the Estoppel would not apply to the extent that changing the law would give you a different result after the law changed versus the law before the change. And your argument here with respect to changing the law is that there was no change? No. What I'm saying is before the whole section 101 issue came into focus for everyone, before Bilski, before Alice, before Mayo, computer programming was regularly accepted by the patent office as a valid patentable subject matter. And those patents were regularly enforced by the courts. Bilski started the move away from that. Mayo clarified it. And then Alice presented it as a formula, a two-part test. This, our first lawsuit is when we say it should not have stopped us in the second lawsuit that came after all that. The first lawsuit came before all that. The original motion was filed before all of that. And so we didn't have the benefit of that new change in the law at the time we filed the original papers. But even if we did, I would still say that it wasn't actually litigated and nor was it necessary to her decision, Judge Foster's decision in the first case. And so under either event, a change in the law or it wasn't actually litigated or it wasn't necessary to her decision, under any of those three rationales, I believe. Do you have authority for your proposition that having the default entry or default judgment here with the Section 101, that that's not collaterally stopped? Yes, Your Honor. And I'm asking for the default nature of what we're talking about, that that's not having litigated the issue. Your Honor, in Meyer v. Rigdon, Seventh Circuit 1994, accordingly default judgments are not given preclusive effect. Foster v. Halco Manufacturing, Federal Circuit 1991, where a judgment between parties is entered by consent prior to trial on any issue. No issue may be said to have been fully and fairly or actually litigated. These are all at page 27 of our brief, Your Honor. Restatement, second, and judgments, we have a side there too. In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this section does not apply with respect to any issue in a subsequent action. So I believe when you consent to the outcome, in a first case, especially when it's not one critical to the outcomes, the first outcome, you shouldn't be held to be precluded from litigating it in a second lawsuit. This isn't a situation where we've gone back in to try to undo something that was done with something we consented to the first time. This is a situation where we've been sued on the identical patent against many identical products where it's already been found invalid or not infringed on every claim. So it was asserted. And so I believe when you look at the change in the law, you realize this was using a computer to print a piece of paper and have the person who printed that paper confirm, yes, that's what I meant to print. And to me, that's a very abstract idea, the very fundamental use of a general purpose computer to print documents. When you look at the patent, who's doing the verification in that step? That's the voter. The voter looks at the ballot according to the claim, claim 49. I believe it calls out the voter particularly in claim 49. Printing of the votes of the voter from the votes temporarily stored in the computer. So the computer takes the voter's input and prints the ballot. So the actual verification, though. Yeah. The next step, comparison by the voter. It requires the voter to compare it. Of the printed votes with the votes temporarily stored in the computer for the voting station. So the voting station displays how you voted, and then they give you the printout. And the voter is supposed to compare the printout against the screen. And then decision by the voter as to whether a printed ballot is acceptable or unacceptable. So they make the comparison. They say, is this acceptable or unacceptable? I need to make that decision. Upon making that decision, you input information as to the acceptability of the printed ballot by the voter. So the voter says, acceptable or not acceptable? And that, to me, falls squarely within Mayo's requirement that simply using a computer to implement an abstract idea is not a patentable subject matter. Anything else? Okay. Thank you. Thank you. Thank you, Mr. Frank. It should not be forgotten that the issues determined in the first case against the defendant with respect to the 101, 102, 103 issues were raised by the defendant in a counterclaim for declaratory judgment. And we asked for a summary judgment on that counterclaim for declaratory judgment, which they defended against. And I have no reason how they selected their desires to be known to the trial judge. But the fact is that it was a summary judgment on their declaratory judgment, their declaratory action for declaratory judgment, that the claims were all invalid. And that was their position. They also asserted that position as a defense in the affirmative defenses against the complaint itself. But the trial judge said to them, you have brought these issues up and they had to be responded to by the plaintiff and you put them in play. And that's precisely why she ruled the way she did. The other thing is this notion that they consented to the judgment. Of course, it would then becomes absurd in view of the fact that they are the ones who raised all the issues in a counterclaim, which was held against them. Now, with respect to the the change in the law, starting with the Mayo case, the creation of the two step process, the two step process has nothing to do with whether or not an invention is is abstract or simply an abstract idea. That has been the law as stated by Judge Justice Thomas from the from the very beginning in terms of when when the distinctions were made as to what was patentable under 101. So that has not changed. The two step process is simply a method by which the court can make a determination as to whether there is something patentable when there is an abstract idea involved. Because, for instance, in the Mayo case or in even in Alice, the discretion is is whether or not the whole invention can be performed within the computer. OK, that clearly is is to me that clearly is an abstract idea. It is something that can be performed within a computer. It can be performed within the human mind. So this calls to mind the latest suggestion on this issue by the American Institute of American Intellectual Property Law Association, which has recommended or asked for certain changes in 101. And one of the things that they point out in there is that the two step process only the two step process is entirely valid in that it allows the judges that the trial court and the appellate court to analyze the claims in view of whether or not there is a patentable invention. Starting with starting with whether or not the idea is abstract. So as in the case of gear, which is the one that had is cited most frequently for the fact that there is a an abstract formula that is which is used and calculated in a computer having to do with the vulcanization of rubber. That algorithm and the use of the computer to digest it and produce results was considered to be patentable. Why? Well, the computer added something to the process and it was a became an automated process for for adjusting the temperatures and for the for the production of vulcanized rubber. So. So there is an example of how the two step process would be appropriate to determine. Number one, is there an abstract an abstraction that is used in the process? The answer there is yes. It's a we need to wrap it up. One last word. Oh, yes. One last word. The. Issue preclusion. I must add that there is no bar whatsoever to issue preclusion in the present case. In this case. Produce the result of liability absent, absent the the muni auction doctor in this case. Thank you. Thank you both. This case is taken under submission. That is this morning's arguments. All rise.